CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 06 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SUE SLUSS, | ) |
| | ) Civil Action No. 5:06CV00102 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) By: Honorable Glen E. Conrad |
| | ) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Sue Sluss, was born on August 7, 1961, and eventually completed her high school education. Mrs. Sluss has worked as a bank teller, hairdresser, and cashier. Although she had an unsuccessful work attempt in 2005, plaintiff last worked on a regular and sustained basis on March 24, 2003. On April 3, 2003, Mrs. Sluss filed an application for a period of disability and disability insurance benefits. Plaintiff alleged that she became disabled for all forms of substantial

gainful employment on March 5, 2003 due to back injuries suffered in an automobile accident; residuals of three foot surgeries; pain, numbness, and burning in her wrists and fingers due to carpal tunnel syndrome; and depression. Mrs. Sluss now maintains that she has remained disabled to the present time. The record reveals that plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Plaintiff's application for a period of disability and disability insurance benefits was denied upon initial consideration and reconsideration. Mrs. Sluss then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated February 19, 2005, the Law Judge also ruled that plaintiff is not disabled. Mrs. Sluss appealed this decision to the Social Security Administration's Appeals Council. By order entered March 30, 2005, the Appeals Council remanded the case to the Administrative Law Judge for additional proceedings. Stated succinctly, the Appeals Council directed the Law Judge to develop the record and give further consideration to plaintiff's nonexertional impairments and her residual functional capacity.

The Administrative Law Judge conducted a supplemental administrative hearing, during which he received testimony from the plaintiff and a vocational expert. The Law Judge produced a new hearing decision on July 7, 2006. The Law Judge found that Mrs. Sluss suffers from a cervical disc disorder; residuals of T9 wedge compression fracture; back disorder; carpal tunnel syndrome; cognitive disorder; major depression; and chronic pain disorder. Because of these impairments, the Law Judge ruled that Mrs. Sluss is disabled for all of her past relevant work activities. However, the Law Judge held that plaintiff retains sufficient functional capacity for a slightly reduced range of sedentary exertion. The Law Judge also noted that plaintiff's capacity for work is further limited by

certain nonexertional limitations associated with anxiety and depression. The Law Judge summarized plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of sedentary level work. She is able to lift/carry 10 pounds occasionally and five pounds frequently. She must avoid prolonged walking/standing. She can perform postural movements, such as climbing, balancing, bending/stooping, kneeling, crouching/squatting, and crawling, on an occasional basis. She has limited ability in feeling with her hands. She has to avoid concentrated exposure to hazards, such as machinery and unprotected heights. She has a slight limitation in the ability to understand and remember very short and simple instructions, understand and remember detailed instructions, carry out detailed instructions, and in accepting instructions and responding appropriately to criticism from supervisors. She has a moderate limitation in the ability to interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and responding appropriately to changes in the work setting. (TR 22-23).

Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as the testimony of the vocational expert, the Law Judge ruled that Mrs. Sluss retains sufficient functional capacity to perform several specific sedentary work roles which exist in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mrs. Sluss is not disabled, and that she is not entitled to a period of disability or disability insurance benefits. See, gen., 20 C.F.R. § 404.1520(g). On this occasion, the Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Sluss has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such

3

an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Mrs. Sluss suffers from a variety of problems in her back and neck, including residuals of a moderate T9 wedge compression fracture with minimal retrolisthesis associated with an old automobile accident; some herniation in her cervical spine with disc space narrowing at C5-6; carpal tunnel syndrome; gastroesophageal reflux disease; cognitive disorder; and depression. Clearly, Mrs. Sluss' musculoskeletal problems and carpal tunnel syndrome prevent performance of any significant physical exertion. Moreover, her early cognitive disorder and depressive symptomatology produce some nonexertional limitations which affect her capacity for work. However, the court must conclude that the medical evidence supports the Law Judge's finding that plaintiff's physical limitations are not so severe as to prevent all forms of work activity. Moreover, given the supplemental psychological evidence developed as a result of the Appeals Council's remand order, the court must also agree that Mrs. Sluss' nonexertional impairments are not so severe as to prevent performance of simple and routine work activities which do not involve frequent contact with other persons. In short, the court concludes that the Administrative Law Judge properly assessed plaintiff's physical and emotional impairments, and that the Law Judge devised fair and comprehensive hypothetical questions for the vocational expert. The court also believes that the Law Judge reasonably relied on the vocational expert's testimony

in concluding that Mrs. Sluss possesses residual functional capacity for several specific work roles which exist in significant number in the national economy. It follows that the final decision of the Commissioner must be affirmed.

The medical record confirms that Mrs. Sluss suffers from significant limitations as a result of musculoskeletal defects in her cervical and thoracic spine. While plaintiff has undergone numerous objective evaluations of her musculoskeletal disorders, and while there has been some suggestion of mild herniation in the cervical spine, the medical record does not confirm the existence of any neural foraminal narrowing or spinal stenosis. Nevertheless, there is some indication of mild reversal of the normal cervical lordosis. However, while there is certainly some objective basis for plaintiff's complaints of musculoskeletal pain, the medical record does not document the existence of such physical problems as would normally support a finding of totally disabling subjective discomfort. The court notes that no doctor has suggested that Mrs. Sluss is disabled as a result of her physical impairments. As for her carpal tunnel syndrome, while her diagnosis has been confirmed through EMG studies, the condition is not said to have progressed to such an extent as to support a recommendation for surgical intervention. The court believes that the Administrative Law Judge properly assessed the medical evidence developed in conjunction with treatment of plaintiff's physical symptoms.

Mrs. Sluss' nonexertional impairments present a somewhat closer question. Prior to the first hearing decision, Dr. Nadia Webb, a neuropsychologist, submitted a psychological evaluation. Based on her clinical interview, Dr. Webb diagnosed cognitive disorder, dysthymia, anxiety disorder, and depressive disorder. Dr. Webb did not consider plaintiff's anxiety symptoms to be overly significant. As for Mrs. Sluss' depression, the psychologist noted that plaintiff had experienced such

5

symptoms throughout her working life. The psychologist reported that plaintiff's cognitive disorder was at an early stage, and that the condition was possibly related to the old automobile accident. Dr. Webb summarized plaintiff's functional abilities as follows:

> Ms. Sluss was able to follow simple and complex instructions as evidenced by her ability to follow a three-step command and to participate in this evaluation. She was able to attend the appointment on time and drove herself independently. She was able to work consistently during the appointment. She did not appear to need additional supervision or repetition of instructions. She does not appear to be significantly hampered by her psychiatric symptoms in terms of her anxiety and depression. She did not report difficulties working with supervisors, co-workers or the public in the past. She did not report difficulty in tolerating stress in a workplace. (TR 256).

Following the Appeals Council's remand, the Administrative Law Judge arranged for a second psychological study. Dr. Joseph Cianciolo completed the second assessment on March 8, 2006. Dr. Cianciolo diagnosed recurrent, moderate, major depressive disorder. He reported a GAF of 60[1]. Dr. Cianciolo offered the following comments as to plaintiff's residual functional capacity:

> Based upon the results of this evaluation, it appears that in addition to being able complete simple tasks, she does possess the ability to perform complex tasks. Her ability to maintain regular attendance in the workplace, perform work activities on a consistent basis, and complete a normal work week without interruption appear to be mildly impaired as a function of psychiatric illness. As to what effect her medical condition would have upon these abilities, this examiner would defer to the treating physician. It is not likely that she would require additional supervision. She does appear to be capable of accepting instruction from supervisors. Her ability to interact with coworkers and the public as well as coping with routine stressors encountered in competitive work appears to be moderately impaired as a function of depressive illness. The patient does appear to be capable of adequately managing her own funds. Prognosis for significant change would appear to be guarded given the fact that the patient has a long-term history of psychiatric illness but is receiving no treatment for same at the present time. (TR 263).

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 60 and 51 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision. Washington, D.C., American Psychiatric Association, 2000. P. 47.

6

The transcript of the administrative hearing reveals the following exchange between the Administrative Law Judge (ALJ) and the vocational expert (VE):

Q [ALJ]: Mr. Lester, I'll just start with the individual functional capacity assessment. I want you to consider a person who has the ability to lift five pounds frequently, ten pounds on occasion, a person who's not able to do prolonged walking or standing. If these are the exertional limitations, in your opinion could such a person perform sedentary work?

A [VE]: Yes, sir.

Q: Would it be a full range of that?

A: Slightly limited.

Q: I want you to consider non-exertional limitations. Consider a person whose age ranges from 41 to 44, that person who has a high school education, that person who has to claim a straining in work experience, and a person who has exertional impairments which would permit slightly less than a full range of sedentary work. But assume also that there are the following non-exertional impairments and limitations. All postural activities could be performed occasionally to include climbing, balancing, bending, stooping, kneeling, crouching, squatting, crawling. And the same would be true of feeling with the hands occasionally. Such a person would have to avoid concentrated exposure to hazards such as moving machinery, or unprotected heights. And then such person would have the following mental limitations, and these limitations are based on the consultative examination report of Exhibit 12F, and some definitions are in order. First, slight means that there is some mild limitation, but the individual can generally function well. And moderate means that there is a moderate limitation in the area, but the individual is still able to function satisfactorily. Consider that there's a slight limitation in the ability to understand and remember very short and simple instructions, as well as to understand and remember detailed instructions and carry out detailed instructions, to accept instructions and respond appropriately to criticism from supervisors. There would be moderate limitations in the ability to interact appropriately with the general public, get along with co-workers, the peers without distracting them or exhibiting behavioral extremes, or to respond appropriately to changes in the work setting. If these are the

7

| | |
|---|---|
| | limitations and then we then consider unskilled sedentary jobs, there are 200 recognized. In your opinion if a person had those limitations, what percentage of those 200 jobs could be performed? |
| A: | 75% |
| Q: | Can you give me two examples of sedentary unskilled jobs consistent with those limitations, and then tell me how many of them are available nationally, as well as the Winchester area. |
| A: | Yes, sir. Sedentary unskilled work available to such an individual would include work, adjusting work such as a call-out operator, there's approximately 45,000 such positions in the national economy, some 400 in the regional economy, regional being a 75 miles radius of Winchester, Virginia. Also work as a charge account – scratch that. That's not a good one. Work as a surveillance system monitor, there's 85,000 nationally, some 500 locally. Those are sedentary, unskilled positions that are consistent with the descriptions provided in the Dictionary of Occupational Titles. (TR 389-391). |

In the court's view, the Administrative Law Judge's hypothetical questions to the vocational expert accurately represented plaintiff's physical, emotional, and cognitive limitations. Indeed, the court finds that the Law Judge essentially used the findings of the consultative psychologists in formulating the questions posed to the expert. The court concludes that the expert's evaluation of the vocational evidence, and the assumptions under which the expert deliberated, are both reasonable and consistent with the evidence of record. The court concludes that the Law Judge properly relied on the vocational expert's testimony in determining that plaintiff retains sufficient functional capacity for certain sedentary work roles which exist in significant number in the national economy. Accordingly, the final decision of the Commissioner denying plaintiff's claim for benefits must be affirmed.

In affirming the Commissioner's final decision, the court does not suggest that Mrs. Sluss is free of all pain, discomfort, weakness, and emotional symptoms. Indeed, the medical record confirms that plaintiff suffers from serious musculoskeletal impairments, as well as worrisome

emotional symptoms, which can be expected to result in significant subjective symptomatology. The court recognizes that in denying plaintiff's claim, the Administrative Law Judge rejected those portions of plaintiff's testimony concerning her need to rest for thirty minute periods throughout the course of a day and her description of the numbness in her arms and fingers. However, the court again notes that no doctor has confirmed the existence of such medical needs or problems. As for plaintiff's periods of rest, the court believes that the Administrative Law Judge took this limitation into account in determining that Mrs. Sluss can only perform sedentary levels of work. As for the numbness in her upper extremities, the court again notes that plaintiff's doctors have not identified a cause for any such problems, and that they consider her carpal tunnel syndrome to be at an early stage of severity. Notably, the court again recognizes that no physician or mental health specialist has suggested that Mrs. Sluss is totally disabled for all forms of work activity. It must be recognized that the inability to do work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). It appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claim for benefits. As suggested above, the court finds that the Law Judge's determination of residual functional capacity for no more than sedentary exertion gives deference to Mrs. Sluss' musculoskeletal difficulties. Based on the two psychological reports, one of which was generated as a result of the intervention of the Social Security Administration's Appeals Council, the court believes that the record supports the Law Judge's finding of residual functional capacity for simple tasks not involving extensive exposure to other persons. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales,

9

supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 6th day of July, 2007.

/s/ Glen E. Conrad
United States District Judge